# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7991 | **DATE** | 1/15/2004 |
| **CASE TITLE** | Ken-Pin, Inc., vs. Vantage Bowling Corp., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 29 Jan. 04 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Computer Score's motion to dismiss Count I is GRANTED and its motion to dismiss Count II is DENIED. The Vantage Defendants' motion to dismiss Count III is GRANTED. The Vantage Defendants' motion to dismiss Count IV is DENIED. Count IV is dismissed against Schmidt, however, for lack of personal jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

WAP — courtroom deputy's initials

JAN 2 0 2004

number of notices

date docketed

docketing deputy initials

date mailed notice

U.S. DISTRICT COURT
CLERK
04 JAN 16 AM 2: 21

**Document Number**

Date/time received in central Clerk's Office

mailing deputy initials

**FILED**

JAN 1 5 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

KEN-PIN, INC.,

        Plaintiff,

      v.

VANTAGE BOWLING CORP., MARK
SCHMIDT and COMPUTER SCORE
PTY., LTD.,

        Defendant.

Case No. 02 C 7991

Hon. Harry D. Leinenweber

**DOCKETED**

JAN 2 0 2004

## MEMORANDUM OPINION AND ORDER

In this diversity action, plaintiff Ken-Pin, Inc. ("Ken-Pin"), an Illinois corporation with its principal place of business in Richmond, Illinois, is maintaining a four-count complaint against Vantage Bowling Corp. ("Vantage"), a Colorado corporation with its principal place of business in Denver, Colorado, against Mark Schmidt ("Schmidt" and, collectively with Vantage, "the Vantage Defendants"), a Colorado resident and Vantage's chief executive officer, and against Computer Score Pty., Ltd. ("Computer Score"), a foreign corporation organized under the laws of Australia with its principal place of business in Tweed Heads South, New South Wales, Australia. Before the Court are the Vantage Defendants' and Computer Score's motions to dismiss Ken-Pin's complaint. For the following reasons, the motions are granted in part and denied in part.

# I. __BACKGROUND__

The dispute at hand relates to the sale and servicing of computerized scoring equipment used at bowling centers. The following facts are taken from Ken-Pin's complaint and are construed as true. Ken-Pin is a corporation that markets, sells, installs, and services products and equipment used at bowling centers. In the early 1990s, Computer Score developed an automatic bowling scoring system (the "Scoring System"). The Scoring System was a gift to less mathematically adept bowlers as it allowed them to score their games automatically and to display the results on monitors. In a letter dated June 21, 1993, Computer Score offered Ken-Pin in writing the option of entering into an exclusive or non-exclusive distributorship of the Scoring Systems in the United States. The letter offered Ken-Pin the right to market, install and service, or to manufacture Scoring System equipment. Ken-Pin purchased the non-exclusive rights for $60,000 and paid the amount in full by June 1994.

From 1993 until 1998, Ken-Pin sold Scoring Systems that had been manufactured and assembled in Australia and then shipped to the United States for delivery and installation. Wishing to avoid the freight costs involved in this process, in late 1997 Ken-Pin began to negotiate a subcontract with Vantage, a corporation also involved in the development, marketing, and sale of products and services for the bowling industry, for the manufacture of Scoring

System hardware. On May 18, 1998, Ken-Pin also entered into employment agreements with Art and Craig Lackenbach (the "Lackenbachs") to install and service the Scoring Systems. As part of their employment contracts, the Lackenbachs entered into covenants not to compete that restricted them from engaging in certain commercial activities in the bowling industry for two years after their employment with Ken-Pin ended. One of the projects the Lackenbachs completed for Ken-Pin was a manual for the installation, maintenance, and operation of the Scoring Systems. The project cost Ken-Pin $28,000.

On March 14, 2000, the Lackenbachs resigned from Ken-Pin, effective April 17, 2000 and subsequently went to work for Vantage. According to Ken-Pin, despite its warning that the Lackenbachs had entered into restrictive covenants, Schmidt and Vantage engaged the Lackenbachs in prohibited commercial activities. Ken-Pin learned of the violations on November 6, 2000. Six months later, on May 8, 2001, Ken-Pin received further bad news when it learned from Computer Score that Vantage was to be Computer Score's sole and exclusive distributor for the Scoring Systems in the United States and that Computer Score would no longer be selling the Scoring System's electronic and software components to Ken-Pin.

On November 5, 2002, Ken-Pin filed a three-count complaint in this Court. In response, the Vantage Defendants and Computer Score filed motions to dismiss. Ken-Pin requested and received several

enlargements of time in which to respond to the pending motions, but on August 1, 2003, filed an amended complaint instead. In the amended complaint, it asserted claims for breach of contract against Computer Score (Count I), promissory estoppel against Computer Score (Count II), tortious interference with Ken-Pin's contracts against Vantage and Schmidt (Count III), and tortious interference with Ken-Pin's prospective economic advantage against Vantage and Schmidt (Count IV). The Vantage Defendants and Computer Score again responded by filing motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion to dismiss will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The parties agree that the applicable law is that of Illinois.

In assessing the merits of a Rule 12(b)(6) motion, a court is usually confined solely to the pleadings, which consist generally of the complaint and any exhibits attached to it, and supporting briefs. *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002). If additional evidence is placed before the court and not excluded, the court must typically convert the motion into a Rule 56(c) motion for summary judgment. *Id.* Under a narrow exception to this rule, however, a court may consider documents attached by a defendant to the motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to his or her claim. *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998); *see also Tierney v. Vahle,* 304 F.3d 734, 738-39 (7th Cir. 2002) (collecting cases). The Vantage Defendants attach several documents to their motion to dismiss that Ken-Pin refers to in its amended complaint and that the Court believes are central to Ken-Pin's claims. These are the June 21, 1993 letter from Computer Score to Ken-Pin, in which Computer Score offered Ken-Pin the United States distributorship for the sale of the Scoring System, and the employment agreements between Ken-Pin and the Lackenbachs. As the Seventh Circuit explained in *Levenstein,* it is particularly appropriate to consider such pertinent documents in contract interpretation cases. *Levenstein,* 164 F.3d at 327. Accordingly, the Court will consider these documents in addressing the Vantage

Defendants' motion to dismiss without converting the motion to a motion for summary judgment.

### III. DISCUSSION

### A. Computer Score's Motion to Dismiss

Computer Score brings its motion pursuant to Rule 12(b)(6) and argues that Ken-Pin has failed to state a claim against Computer Score for either breach of contract or promissory estoppel.

#### 1. *Count I*

In Count I, Ken-Pin alleges that Computer Score breached its distributorship agreement when it decided that it would no longer sell Ken-Pin Scoring Systems or components of Scoring Systems. Under Illinois law, to state a cause of action for breach of contract, a plaintiff must allege sufficient facts to establish four elements: (1) the existence of a valid and enforceable contract containing both definite and certain terms; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) injury to the plaintiff. *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999). In order to allege the existence of a contract, Ken-Pin must present facts in its complaint indicating an offer, acceptance and consideration. *Id.* In order for the contract to be binding and enforceable, the terms must be "sufficiently definite and certain so that a court can determine what the agreement was and what conduct constituted a breach." *Id.* Computer Score contends that

the claim must be dismissed because: (1) the alleged agreement between the parties lacked essential terms establishing mutuality of obligation and therefore was unenforceable; (2) the alleged agreement lacked a specific term of duration and was terminable at will; and (3) the alleged agreement was not reduced to writing and its enforcement is barred by the Statute of Frauds as set forth in the Uniform Commercial Code. Because the Court agrees with Computer Score's first contention, *viz.*, that the alleged agreement lacks specific terms and is therefore unenforceable, it need not reach the remaining two arguments.

The agreement between Computer Score and Ken-Pin is actually the June 21, 1993 letter from a Tony Uccello on behalf of Computer Score to Ken Schroeder at Ken-Pin. The letter presents "a proposal . . . with regards to [Ken-Pin's] approach on distributing [Computer Score's] product in the U.S.A." Ken-Pin accepted the offer contained in the letter and chose to acquire non-exclusive distributorship rights. Ken-Pin's claim that this agreement was breached cannot succeed because the agreement is neither sufficiently definite nor certain with respect to numerous essential terms. There is no way for the Court to determine, either from the complaint or from the agreement itself, the duration of the contract, the geographical area involved, the pricing scheme, the nature and extent of incidental services to be performed, standards of performance, or the means of termination.

*Bensdorf & Johnson, Inc.*, 58 F. Supp. 2d at 877-78. Illinois courts consider terms such as duration and sales quotas essential terms of a distribution agreement. *Magid Mfg. Co., Inc. v. U.S.D. Corp.*, 654 F. Supp. 325, 333 (N.D. Ill. 1987). Lacking not only these terms but numerous other critical contract elements, the Court has no way of assessing whether or when a breach occurred and, accordingly, the contract is unenforceable. *Acad. Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991)("[I]f the essential terms [of a contract] are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.").

Although Ken-Pin claims that the only term missing from the contract is that of duration, it does not demonstrate that other essential terms are in fact included in the letter. Instead it contends that because the price for the distributorship was clearly stated and paid, and because Ken-Pin expended expense, effort and manpower during the course of its relationship with Computer Source, the contract is enforceable. If Computer Score were arguing that the contract was unenforceable because there was no mutuality of obligation, Ken-Pin's response would be persuasive. After all, while mutuality of obligation is a requirement of an enforceable contract, *Kraftco Corp. v. Kolbus*, 274 N.E.2d 153, 155 (Ill. App. Ct. 1971), it is satisfied if each party has given sufficient consideration for the other's promise. *Hofmeyer v.*

*Willow Shores Condo. Ass'n*, 722 N.E.2d 311, 315 (Ill. App. Ct. 1999). Computer Score does not argue that there was any lack of consideration from each party. Unfortunately for Ken-Pin, however, the lack of mutuality of obligation is not the critical problem with the agreement. The problem is more fundamental: while there is arguably an offer, an acceptance and consideration, the agreement is lacking definite and certain essential terms and cannot be enforced. As a result, Computer Score's motion to dismiss Count I is granted.

### 2. *Count II*

In Count II, Ken-Pin asserts a claim for promissory estoppel against Computer Score and argues that based on Computer Score's unambiguous promises, it spent more than $228,000 on various systems associated with distribution of the Scoring System that are now worthless. In Illinois, in order to state a claim for promissory estoppel, Ken-Pin must allege: (1) an unambiguous promise by Computer Score; (2) reasonable and justifiable reliance by Ken-Pin on that promise; (3) that the reliance was expected and foreseeable by Computer Score; and (4) that Ken-Pin relied upon the promise to its detriment. *Fischer v. First Chicago Capital Mkts., Inc.*, 195 F.3d 279, 283 (7th Cir. 1999). Computer Score challenges the sufficiency of Ken-Pin's complaint on several grounds: (1) it fails to identify a clear and unambiguous promise made by Computer Score; (2) it fails to establish reasonable reliance given that the

relationship with Computer Score was terminable at will; and (3) it fails to establish actual reliance to its detriment.

Computer Score first faults Ken-Pin for failing to allege any particular words of promise and for failing to state when the purported promises were made. Computer Source also argues that Ken-Pin fails to allege actual words regarding the duration of the promise. This level of specificity, however, is not required under federal pleading standards. Ken-Pin need only allege that Computer Source made unambiguous promises and this it has done. In its complaint, Ken-Pin alleges that Computer Score made "numerous unambiguous promises," in writing and orally, that it would continue to make the Scoring Systems available to Ken-Pin for distribution. It further alleges that Computer Score made initial promises and then continued to make such promises over the course of its relationship with Ken-Pin. While it may become obvious as this action develops that the promises, like the alleged agreement, were neither unambiguous nor clear as to duration or other critical elements, that is not an appropriate inquiry at this stage.

Computer Score also argues that Ken-Pin fails to establish actual reliance to its detriment. More specifically, it argues that Ken-Pin does not allege that any of the costs it incurred were required by Computer Score. That is not required. Ken-Pin only need allege that its reliance was reasonable and justifiable and that the reliance was expected and foreseeable by Computer Score.

In its complaint, Ken-Pin alleges that based on Computer Score's continuing promises to make the Scoring Systems available to Ken-Pin for distribution, it spent $28,000 to develop a manual, $40,000 to set up a four-booth display for the Scoring Systems at an expo in Tennessee, and incurred administrative costs of more than $100,000 developing a market for Scoring Systems and setting up a distribution network. It further alleges that Computer Score knew that Ken-Pin would rely on its promises.

Finally, Computer Score argues that the claim for promissory estoppel is barred by the statute of frauds. Without knowing more about the promises themselves, the Court cannot address the merits of this argument. The argument would be more appropriately raised in a motion for summary judgment.

For the reasons stated above, Computer Score's motion to dismiss Count II is denied.

### B.  The Vantage Defendants' Motion to Dismiss

Like Computer Score, the Vantage Defendants argue that Ken-Pin fails to state any claim against them upon which relief may be granted. They further contend that Schmidt is entitled to dismissal because this Court lacks personal jurisdiction over him. The Court will address each argument in turn.

### 1. *Failure to State a Claim*

#### a. *Count III*

In Count III, Ken-Pin alleges that Vantage and Schmidt tortiously interfered with its contract with Computer Score and with its covenants with the Lackenbachs. Under Illinois law, the elements of a claim for tortious interference with contractual rights are: (1) the existence of a valid and enforceable contract between the plaintiff and another party; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other party caused by the defendant's wrongful conduct; and (5) damages. *A-Abart Elec. Supply v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992)(citing *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1139 (Ill. App. Ct. 1990)); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). The Vantage Defendants argue that Ken-Pin cannot show the existence of a valid, enforceable distribution contract with Computer Score or of enforceable employment covenants with the Lackenbachs. They further contend that Ken-Pin has not sufficiently alleged that their conduct was malicious or unjustified.

As already discussed, the alleged agreement with Computer Score is unenforceable and, accordingly, Ken-Pin has no claim for tortious interference with that alleged contract. Because the

Lackenbach covenants are also unenforceable, the Vantage Defendants' motion to dismiss Count III is also granted.

The covenants not to compete entered into by the Lackenbachs are identical. In the covenants, the Lackenbachs agreed that they would not "directly or indirectly engage in a business or other activity generally described as: the distribution or servicing of bowling lane equipment, supplies or services to bowling centers notwithstanding whether said participation be as an owner, director, employee, agent, consultant, partner or stockholder (except as a passive stockholder in a publicly owned company)." The covenants applied "within the states [sic] of Illinois, it's [sic] contiguous states and Minnesota with the exception that the covenant not to compete shall enlarge to apply to the entire United States of America regarding any and all activities involving the installation or servicing of automatic scoring equipment for bowling." The covenant expired two years after the Lackenbachs terminated their employment with Ken-Pin.

The validity of a restrictive covenant is a question of law. *Applied Micro, Inc. v. SJI Fulfillment, Inc.*, 941 F.Supp. 750, 753 (N.D. Ill. 1996). Illinois courts will not enforce a restrictive covenant unless the terms of the agreement are reasonable and necessary to protect an employer's legitimate business interests. *Hanchett Paper Co. v. Melchiorre*, 792 N.E.2d 395, 400 (Ill. App. Ct. 2003). In fact, they have cautioned that because restrictive

covenants "impair the availability of services and interfere with competition . . . such covenants are carefully scrutinized by the courts." *Hamer Holding Group, Inc. v. Elmore*, 613 N.E.2d 1190, 1198 (Ill. App. Ct. 1993). Covenants, such as those in this case, that are collateral to an employment contract are viewed less favorably than those that are ancillary to the sale of a business. *Id.* at 1197.

The purpose of a restrictive covenant ancillary to an employment contract is to protect the employer from the possibility of losing clients to an employee who appropriates proprietary customer information for his own benefit, and to shield him from the possibility of losing customers with whom he enjoys a near-permanent relationship. *Cent. Water Works Supply, Inc. v. Fisher*, 608 N.E.2d 618, 621-622 (Ill. App. Ct. 1993). Accordingly, if the covenant is ancillary to an employment agreement, it will only be enforced if the employer (1) shows that the restriction is reasonable as to time, geographical area and scope of prohibited business activity, and (2) demonstrates special circumstances, such as a near-permanent relationship with his employee's customers and that the former employee would not have had contact with the customers but for his association with the employer, or the existence of customer lists, trade secrets or other confidential information. *Hamer Holding Group, Inc. v. Elmore*, 560 N.E.2d 907, 915-16 (Ill. App. Ct. 1990).

In its complaint, Ken-Pin alleges that subsequent to their employment with Ken-Pin and while employed by Vantage, the Lackenbachs sold, installed, and serviced Scoring Systems in Illinois and other states for Vantage. It does not allege that the Lackenbachs misused customer lists, trade secrets or other confidential information or that they stole clients with whom Ken-Pin enjoyed a near-permanent relationship. In short, it alleges no facts that support its contention that the covenants are enforceable.

Even if Ken-Pin had alleged that the covenants are enforceable to protect its legitimate business interests, the broad scope of the agreements make them unreasonable as a matter of law. The determination of reasonableness depends on the facts and circumstances of each case. *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 719 N.E.2d 1141, 1143 (Ill. App. Ct. 1999). Courts will only uphold restrictive covenants that "protect the employer's legitimate proprietary business interests and not those whose effect is to prevent competition *per se*." *Id.* at 1147. While Ken-Pin claims that the covenants are designed to prevent employees from taking customers and "everything they have learned" to a direct competitor, there is no limitation in Ken-Pin's covenants on the class of customers to whom the agreements apply. Instead, the covenants prohibit the Lackenbachs from working not only with customers they had while employed by Ken-Pin, but also with future

customers with whom neither they nor Ken-Pin had ever worked. Courts are reluctant to enforce precisely these types of prohibitive agreements because their purpose is to restrict competition, not to protect an employer from losing long-standing clients. *Id.* After all, as a matter of law, Ken-Pin "cannot have a protectable interest in future customers who do not yet exist." *Id.* at 1148. In this case, the chilling effect the covenants at issue have on competition is further heightened by the unreasonably broad geographic scope of the agreement.

Because the covenants, like the alleged contract with Computer Score, are invalid, Ken-Pin is not entitled to relief on its claim for tortious interference with contractual rights. Accordingly, the Court need not reach the merits of the Vantage Defendants' argument that Ken-Pin has not sufficiently alleged that their conduct was malicious or unjustified. Count III of the Amended Complaint is dismissed.

### b. Count IV

While Ken-Pin cannot recover for interference with existing contractual rights in the absence of a valid, enforceable contract, it may still recover for tortious interference with prospective business advantage. In order to do so, Ken-Pin must show: (1) its reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of that expected relationship; (3) purposeful interference by the defendant that

- 16 -

prevents the expectancy from developing into a valid business relationship; and(4) damages to the plaintiff resulting from that interference. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999) (citing *Dowd & Dowd, Ltd. v. Gleason*, 639 N.E.2d 358, 370 (Ill. 1998)).

With respect to this claim, Ken-Pin's complaint states a claim upon which relief could be granted. Ken-Pin alleges that it had a reasonable expectation that its business relationship with Computer Score would continue, based on the consideration it paid for a non-exclusive distributorship and on its course of dealing with Computer Score. It further asserts that Vantage and Schmidt knew of the relationship between Ken-Pin and Computer Score and of Ken-Pin's expectation that the relationship would continue. According to the complaint, Vantage and Schmidt nonetheless intentionally caused Computer Score to enter into an exclusive agreement with them that was fatal to Ken-Pin's expectation of a continuing non-exclusive distributorship. Ken-Pin alleges that Vantage and Schmidt's actions caused it to lose anticipated further profits from its relationship.

Vantage and Schmidt do not argue that Ken-Pin's complaint fails to allege the elements of the tort. Instead, they claim that Vantage, as a competitor of Ken-Pin, is protected in its actions by a competitor's privilege. As the Seventh Circuit has explained, "the process known as competition, which though painful, fierce,

- 17 -

frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999). As such, "competition is not a tort, but on the contrary provides a defense (the 'competitor's privilege') to the tort of improper interference." *Id.* (internal citations and quotation marks omitted). In Illinois, a competitor is ineligible for this privilege if its conduct is motivated solely by spite or ill will. *Int'l Mktg., Ltd.*, 192 F.3d at 731.

While the competitor's privilege is typically an affirmative defense, where a complaint clearly reveals its existence, judgment on the pleadings is possible. *Id.* Ken-Pin clearly states that Vantage is one of its competitors and therefore, the question is whether Vantage's actions were privileged. In its complaint, Ken-Pin alleges that Vantage and Schmidt: (1) used the Lackenbachs to undermine Ken-Pin's business in violation of the covenants not to compete; and (2) deceptively encouraged Ken-Pin to introduce Vantage to Computer Score as a Ken-Pin vendor so that Vantage could enter into an exclusive distributorship relationship with Computer Score. Ken-Pin argues that, under the federal notice pleading requirements, these allegations are sufficient to charge the Vantage Defendants with a motivation of ill-will. The Court disagrees. Nothing in the complaint supplies any reason to believe

that the Vantage Defendants were motivated by ill-will or spite or, indeed, by anything other than pure competitive instinct.

Contrary to the Vantage Defendants' argument, however, a party that has behaved unfairly, or used "wrongful" means, is ineligible for the competitive privilege even if it acted purely with competitive motive. *E.J. Brach Corp. v. Gilbert Int'l, Inc.*, No. 90 C 1399, 1991 WL 148914, at * 7 (N.D. Ill. June 18, 1991). Ken-Pin alleges that the Vantage Defendants "deceptively encouraged Ken-Pin to introduce Vantage to Computer Score . . . while hiding from Ken-Pin that their intention was not to enhance Ken-Pin's enjoyment of its right to distribute Scoring Systems, but to abrogate that right altogether." Ken-Pin also describes the Vantage Defendants' actions as "wrongful" in its complaint. While the Vantage Defendants question whether the conduct was actually wrongful, this appears to be a question of fact that is premature at this early stage of the action. Given the liberal federal rules of notice pleading, for now at least, Ken-Pin's allegations are sufficient to state a claim of tortious interference of prospective economic advantage.

## 2. Personal Jurisdiction

Given that the Vantage Defendant's motion to dismiss Count IV is denied, the Court must address the Vantage Defendants' final claim: that the Court does not have personal jurisdiction over Schmidt. Ken-Pin bears the burden of proving the existence of

personal jurisdiction by a preponderance of the evidence. *Webeq Int'l, Inc. v. RFD Publ'ns, LLC,* No. 03 C 3986, 2003 WL 22455516, at *2 (N.D. Ill. Oct. 29, 2003). In this diversity action, the Court can only exercise jurisdiction over Schmidt if an Illinois court could do so. *Id.*

Under the Illinois long-arm statute, 735 ILL. COMP. STAT. ANN. 5/2-209(c), Illinois courts may assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. The Seventh Circuit has suggested that there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" and accordingly, the two constitutional analyses blend together. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002).

The Court may exercise jurisdiction over a nonresident defendant when that defendant has had "minimum contacts" with Illinois and when maintenance of the suit does not "offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Central to the minimum contacts analysis is the question of whether the defendant "should reasonably anticipate being haled into court in the forum state because the defendant has purposefully availed itself of the privilege of conducting activities there." *Id.* (internal citations and quotation marks omitted). The level of

contact required depends on whether the state asserts "general" or "specific" jurisdiction. *Id.* General jurisdiction permits jurisdiction over suits that neither arise out of nor are related to the defendant's contacts. These are only permitted when the defendant has "continuous and systematic general business contacts with the forum." *Id.* Because Ken-Pin does not allege that Schmidt has systematic contact with Illinois, it has waived a general jurisdiction argument. *Id.* In a specific jurisdiction case, the state has jurisdiction over a defendant in a suit that arises out of or is related to the defendant's contact with the forum. *Id.*

According to an affidavit filed by Schmidt and attached to the motion to dismiss, Schmidt is a resident of Lakewood, Colorado and has been a resident and domiciliary of Colorado since 1979. He does not own property, engage in banking relationships, maintain an office, employ agents, or conduct business in Illinois. He further states that none of the negotiations between Vantage and Computer Score occurred in Illinois and that the relationship between Vantage and the Lackenbachs was initiated and conducted in Colorado. Indeed, the Vantage Defendants argue that none of Schmidt's allegedly tortious acts occurred in Illinois.

Ken-Pin, however, contends that Vantage negotiated and entered into the contract with Ken-Pin in Illinois to supply parts for Computer Score products. It also contends that between 1997 and 2001, Vantage contracted for and sold component parts that were

shipped to Ken-Pin in Illinois. Arguably, the claim for tortious interference of prospective economic advantage is related to Vantage's initial contract with Ken-Pin. After all, Ken-Pin alleges that Vantage wrongfully used that contract to form a relationship with Computer Source. The problem is that Ken-Pin provides the Court with no specific information on what types of contacts Schmidt had with Illinois when Vantage negotiated that contract. Indeed, the Court does not know whether Schmidt negotiated the contract, where those negotiations took place, or whether he ever met with Ken-Pin in Illinois. There is nothing in the amended complaint to inform the Court. Ken-Pin cites to *United Air Lines, Inc. v. Conductron, Corp.*, 387 N.E.2d 1272 (Ill. App. Ct. 1979), which states that "while physical presence in itself is not always necessary, the act or transaction which is viewed as 'doing business' must have substantial connection with the State." *Id.* at 1275. It is the quality of the contact between the act and the forum that matters, and accordingly, a "single act may well be sufficient to subject the defendant to the jurisdiction of the Illinois courts." *Id.* Where the Court is given no specifics on the quality of the contact between the act and the forum, it is impossible for it to find that there was a sufficient connection to confer jurisdiction. The burden is on Ken-Pin to provide those specifics and it has failed to meet that burden. The Court finds that it does not have personal jurisdiction over Schmidt. As a

result, while the Vantage Defendants' motion to dismiss Count IV is denied, Count IV is dismissed against Schmidt for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Computer Score's motion to dismiss Count I is **GRANTED** and its motion to dismiss Count II is **DENIED**. The Vantage Defendants' motion to dismiss Count III is **GRANTED**. The Vantage Defendants' motion to dismiss Count IV is **DENIED**. Count IV is dismissed against Schmidt, however, for lack of personal jurisdiction.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: _January 15, 2004_